Floyd F. ROYSDON, et al.

v.

R.J. REYNOLDS TOBACCO COMPANY.

Civ. No. 3–84–606.

United States District Court, E.D. Tennessee, N.D.

Dec. 18, 1985.

J.D. Lee, Knoxville, Tenn., Janette Lay, Wilson & Lay, Oneida, Tenn., for plaintiff.

Robert R. Campbell, Hodges, Doughty & Carson, Knoxville, Tenn., Ray H. Moseley, and K. Stephen Powers, Chattanooga, Tenn., for defendant.

## OPINION AND ORDER

HULL, District Judge.

This products liability action came to trial by jury on December 9, 1985. Plaintiffs, Mr. and Mrs. Floyd R. Roysdon, claimed that Mr. Roysdon suffers severe peripheral vascular disease as a proximate result of many years of smoking cigarettes manufactured by the defendant R.J. Reynolds Tobacco Company [R.J. Reynolds]. The Roysdons made two claims: that the defendant's cigarettes are defective and unreasonably dangerous to the health of users and that the warnings on cigarette packages and in their advertising are inadequate to fully apprise users of the medical risks involved in smoking.

Before trial, the Court dismissed that portion of the plaintiff's claim which rested on inadequate warnings. At the close of the plaintiff's proof, the Court directed a verdict for the defendant on the remaining issue, finding that the plaintiffs had failed to prove that the products at issue were "unreasonably dangerous".

This opinion will address the Court's reasoning on both issues.

### I. *The adequacy of the warnings.*

■ In this lawsuit, it was undisputed that R.J. Reynolds had at all times pertinent fully complied with the relevant federal Cigarette Labeling and Advertising Act [the Act]. 15 U.S.C. §§ 1331–1340. The issue to be resolved was whether, in light of this compliance, plaintiff still could claim that labels were inadequate or whether the labels must be ruled adequate as a matter of law.

R.J. Reynolds took the position that Congress had preempted any claim based on the adequacy of the warning labels. It relied on very specific preemption language contained in 15 U.S.C. § 1334, which reads as follows:

(a) No statement relating to smoking and health, other than the statement required by section 1331 of this title, shall be required on any cigarette package.

(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

It is obvious that this statute prohibits the Tennessee legislature from requiring R.J. Reynolds to use any statement relating to smoking and health other than the one congressionally mandated. The statute does not explicitly prohibit state common law tort actions based on labeling. However, congressional intent need not be expressly stated but may be implied from the structure and purpose of the particular statute. *Fidelity Federal Savings & Loan Assoc. v. delaCuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), and state law must yield when incompatible with federal legislation. *Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963).

In order to determine whether common law tort actions based on labeling have been preempted, the Court must determine whether permitting an award of damages on the basis of an inadequate warning label would be incompatible with the intent of the legislation in question. Section 1331 is a declaration of the legislative intent. It reads,

It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby—(1) the public may be adequately informed that cigarette smoking may be hazardous to health by inclusion of a warning to that effect on each package of cigarettes; and

(2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, non-uniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

It is evident from this language that the congressional purpose was twofold—to inform the public of the health hazards related to smoking and to insure uniformity of labeling. While the imposition of tort damages would not be contrary to the first objective, exposing a manufacturer to potential damages in regards to its labeling would be inconsistent with the second. It would permit a state to achieve indirectly, through exposure to tort liability, what it could not achieve directly through legislation. Certainly exposing a manufacturer to potential damages on the basis of its warning label is a way of requiring a more stringent label. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). And, if the courts were to impose any duty to go beyond the congressionally mandated labeling, this would thwart the stated intent of Congress to have uniformity in the warnings. For this reason, the Court found any such exposure incompatible with the intent of the legislation and dismissed any claim based on the adequacy of the warning label. The only issue remaining for trial was whether or not the defendant's products were defective and unreasonably dangerous.[1]

## II. *The condition of the products.*

■ This products liability action was brought pursuant to this Court's diversity jurisdiction. 28 U.S.C. § 1332(a)(1) and (c), and, accordingly, was governed by Tennes-

see's Products Liability Act of 1978, Tenn. Code Ann. §§ 29–28–101 *et seq.*

Through the introduction of the Surgeon General's reports and medical expert testimony, the plaintiffs made a *prima facie* case that the defendant's cigarettes are dangerous to health, and that they have been harmful to Mr. Roysdon. Of course, many dangerous products, from axes to alcohol, are in the stream of commerce and occasionally injure their users. For R.J. Reynolds, or any manufacturer, to be held liable for the harm caused by its products, the products must be found "unreasonably dangerous."

Under Tennessee law, the test of whether or not a product is unreasonably dangerous is defined as follows:

> "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerous condition.

Tenn.Code Ann. § 29–28–102(8)

The Tennessee Supreme Court has stated that this is determinable from the "knowledge of the ordinary consumers of the product." *Pemberton v. American Distilled Spirits*, 664 S.W.2d 690, 692 (Tenn. 1984). Tennessee tort law has also been held to incorporate comment i to the Restatement (Second) of Torts. *Miller v. Utica Mill Specialty*, 731 F.2d 305, 308 (6th Cir.1984); *Orfield v. International Harvester Co.*, 535 F.2d 959, 963 (6th Cir.1976). Comment i used "good tobacco" (such as that at issue in this lawsuit) as an illustra-

---

1. While Tennessee's products liability act permits the imposition of liability if a product is found to be either defective *or* unreasonably dangerous, Tenn.Code Ann. § 29–28–105(a), it was conceded by the parties that, because Tennessee courts have adopted section 402A of the

Restatement (Second) of Torts, *see Ford Motor Co. v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240 (1966), plaintiffs had the burden of proving that the products were both defective and unreasonably dangerous in order to prevail.

tion of what kind of product would *not* be considered unreasonably dangerous due to the widespread common knowledge as to its characteristics.[2]

In the *Pemberton* case, *supra*, which involved "good alcohol" rather than "good tobacco", the court took judicial notice of the widespread public understanding of the dangers inherent in alcohol. It said, "[a]lcohol has been present and used in society during all recorded history and its characteristics and qualities have been fully explored and developed and are a part of the body of common knowledge." *Id.* at 693.

In the instant action, this Court takes a similar approach. It finds that tobacco has been used for over 400 years and that its characteristics also have been fully explored. Knowledge that cigarette smoking is harmful to health is widespread and can be considered part of the common knowledge of the community. For this reason, as well as because of the language in comment i to section 402A of Restatement (Second) of Torts, this Court finds that the plaintiffs did not make a *prima facie* case that the defendant's products are "unreasonably dangerous".

Accordingly, judgment will enter on behalf of the defendant R.J. Reynolds and the plaintiffs will take nothing on their claim.

**2.** To be unreasonably dangerous, "... [t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; .... Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful...." Restatement (Second) of Torts § 402A, comment i.