Ann M. PALMER, Administratrix for the Estate of Joseph C. Palmer, and Ann M. Palmer, and Daphne S. Palmer, Plaintiffs,

v.

LIGGETT GROUP, INC. and Liggett & Myers Tobacco, Inc., Defendants.

Civ. A. No. 83–2445–MA.

United States District Court, D. Massachusetts.

April 25, 1986.

Robert S. Potters and Daniel A. Shapiro, Nix & Potters, Boston, Mass., for plaintiffs.

Samuel Adams and Joseph Leghorn, Warner & Stackpole, Boston, Mass., Donald J. Cohn, Webster & Sheffield, New York City, for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

MAZZONE, District Judge.

The essential background of this motion is straightforward. Joseph C. Palmer died in 1980, allegedly from lung cancer caused by his smoking L & M cigarettes since 1957. His wife, on her own behalf and as administratrix of his estate, and his mother filed this suit against the defendants, Liggett Group, Inc. and Liggett & Myers Tobacco Co., Inc., cigarette manufacturers and distributors. Plaintiffs' primary claim is that the defendants were negligent in failing to provide adequate warnings about the harmful health effects of cigarette smoking and that this negligence proximately caused Joseph Palmer's death.[1] Defendants have filed a motion to dismiss all claims based upon failure to warn adequately of the health effects of cigarette smoking on the ground that these claims are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331–1341 ("the Act"). Plaintiffs have opposed this motion and both sides have submitted extensive memoranda.

### I.

■ The principles governing the doctrine of preemption are undisputed. The Supremacy Clause, U.S. Const. Art VI, cl. 2, authorizes Congress to pass laws that preempt state law. *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 210–11, 6 L.Ed. 23 (1824). Congress may preempt state common law as well as statutes or regulations. *See, e.g., Chicago & Northwestern Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981). Congress may indicate its intent to preempt state law in several ways. First, it may include express language of preemption in the statute. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Second, Congress may "occupy a given field," thereby preempting any state law within that field. *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). Congress' intent to occupy a given field can be gleaned from the pervasiveness of the federal regulatory scheme, from the dominance of the federal interest, or from the

---

1. The original complaint contained three counts: violation of the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261–1276, by introducing misbranded cigarettes into commerce; negligence in not making cigarettes safer and in failing to provide adequate warnings; and breach of implied warranties of merchantability and fitness. The complaint was later amended to add a claim under the Massachusetts Consumer Protection Act, M.G.L. ch. 93A, alleging that defendants' conduct caused substantial injury to consumers and constituted an unfair trade practice. I dismissed the first count on the grounds that the Federal Hazardous Substances Act does not provide a private cause of action and cigarettes are not hazardous substances within the definition of the statute. I noted that after 1965, the cigarette labeling act preempted claims made under other federal laws. See *Memorandum and Order,* February 1, 1984.

objectives of, and obligations imposed by, the federal law. *Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Third, "[i]f Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood,* 464 U.S. at 248, 104 S.Ct. at 621 (citations omitted). When a court decides whether Congress intended to displace state law, in order not to disturb unnecessarily the federal-state balance, it must begin with the presumption that Congress did not so intend. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981); *Jones,* 430 U.S. at 525, 97 S.Ct. at 1309; *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

## II.

Other federal courts have addressed the question of whether Congress intended the Act to preempt common law claims based upon the adequacy of the warnings on cigarette packages and advertising, so I do not write on a clean slate. The Court of Appeals for the Third Circuit, reversing the New Jersey District Court, recently held that such claims were preempted by the Act because they "actually conflict" with the Act. *Cipolone v. Liggett Group, Inc.,* 789 F.2d 181 (3rd Cir.1986). The Court of Appeals agreed with the District Court that the Act did not expressly preempt common law claims, and that it did not impliedly preempt common law claims by "occupying the field." However, it concluded that such claims actually conflict with Congress' "carefully drawn balance between the purposes of warning the public of the hazards of cigarette smoking and protecting the interests of the national economy." *Id.,* at 187.

A district court in Tennessee concluded similarly that the Act preempts common law claims based upon the adequacy of cigarette warnings. *Roysdon v. R.J. Reynolds Tobacco Co.,* 623 F.Supp. 1189 (E.D. Tenn.1985). It held that the Act did not expressly preempt such common law tort actions, and that the imposition of tort damages would not be inconsistent with one of the two congressional objectives: informing the public of the health hazards relating to smoking. However, it held that exposing a manufacturer to potential tort damages would be inconsistent with Congress' second purpose: insuring uniformity of labeling. *Id.,* at 1190–91.

■ These opinions have provided welcome guidance on this difficult issue. However, after careful consideration of the doctrine of preemption, the Act, and the exhaustive and scholarly opinion by Judge Sarokin in *Cipolone,* 593 F.Supp. 1146 (D.N.J.1984), I must respectfully disagree with the views of congressional intent expressed by the Third Circuit and Eastern District of Tennessee. As is explained more fully below, I cannot conclude that Congress meant, by its silence on the issue of common law claim preemption, to do away with all means of obtaining compensation for those hurt by inadequate cigarette warnings and advertising. Having come to this conclusion, and recognizing the risk of some repetition, I am obligated to set out the analysis by which I reach that conclusion.

## III.

In 1965 Congress responded to a growing concern about the adverse health effects of cigarette smoking by passing the Act, which required the following warning on each package of cigarettes: "Caution: Cigarette Smoking May Be Hazardous to Your Health." 15 U.S.C. § 1333. In 1969 Congress strengthened the required warning: "Warning: The Surgeon General Has Determined That Cigarette Smoking is Dangerous to Your Health." *Id.* Finally, in 1984, Congress replaced this warning with four others that are to be used on a rotational basis:

SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy.

SURGEON GENERAL'S WARNING: Quitting Smoking Now Greatly Reduces Serious Risks to Your Health.

SURGEON GENERAL'S WARNING: Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, And Low Birth Weight.

SURGEON GENERAL'S WARNING: Cigarette Smoke Contains Carbon Monoxide.

*Id.*

In fashioning the Act, Congress was cognizant of a competing concern: the economic wellbeing of the tobacco industry. In section 1331 of the Act, entitled "Congressional declaration of policy and purpose," Congress articulated these two somewhat inconsistent goals of public health and the economy. Section 1331, as amended in 1970, provides:

It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby—

(1) the public may be adequately informed that cigarette smoking may be hazardous to health by inclusion of a warning to that effect on each package of cigarettes; and

(2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

15 U.S.C. § 1331.[2]

Congress included a preemption provision in the Act. It provides:

(a) No statement relating to smoking and health, other than the statement required by section 1331 of this title, shall be required on any cigarette package.

(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334.

I now address each of the arguments presented by the defendants in this case.

## A. *Express Preemption*

The defendants argue that this section expressly preempts plaintiffs' common law claims based upon the adequacy of the warning. They assert that the effect of a successful suit of this nature would be to "require" the defendants to supplement their warning labels. A successful suit would operate as an "imposition" under state law of a "requirement or prohibition" with respect to advertisements.

I disagree with the defendants and I agree with *Cipollone*, at 185–186, and *Roysdon*, at 1190, that the Act does not expressly preempt this tort action. First, there is a strong presumption against preemption. Second, section 1334 does not specifically prohibit damage suits based upon the adequacy of the warning. Congress knew how to expressly bar common law suits when it so desired. *See, e.g.,* Domestic Housing and International Recovery and Financial Stability Act, 12 U.S.C. §§ 1715z–17(d), 1715z–18(e), Copyright Act of 1976, 17 U.S.C. § 301(a), and Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a) & (c)(1). Although Congress could have included a "savings clause" in which it explicitly preserved

---

2. In 1984 Congress amended section 1331 by adding a reference to the inclusion of the warning on cigarette advertisements as well as cigarette packages. Section 1331 now provides:

(1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes....

common law actions as it did in other statutes, *see, e.g.,* the Occupational Safety and Health Act of 1970, 29 U.S.C. § 653(b)(4), its omission of a savings clause is not as probative as its omission of a specific prohibition of common law claims because of the presumption against preemption.

Finally, it strains the words of the statute too much to call a damage award aimed at compensating a victim of negligence a "requirement or prohibition" with respect to advertisements and labeling. Plaintiffs here seek compensation for injuries, not injunctive relief. If found liable, cigarette manufacturers can choose to supplement their warning labels in an attempt to avoid further liability or keep them the same and pay for the injuries they cause. The Supreme Court has stated that

> regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.

*San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959).[3] More recently, however, several members of the Court noted that the effect of compensatory awards on defendants' behavior is indirect and not regulatory in nature. In *Silkwood,* 464 U.S. at 258, 104 S.Ct. at 626, the Court held that the Atomic Energy Act, 42 U.S.C. §§ 2011–2284, did not preempt a state court award of punitive damages in a tort action. It found that Congress assumed when it enacted and amended the Atomic Energy Act that traditional principles of state tort law, including punitive damage awards, would continue to apply. The four dissenters, in two separate dissents, argued that the Atomic Energy Act preempts punitive damage awards, but not compensatory awards. In making this argument they commented on the nature and effect of compensatory damage awards:

> It is true that the prospect of compensating victims of nuclear accidents will affect a licensee's safety calculus. Compensatory damages therefore have an *indirect impact* on daily operations of a nuclear facility.... The crucial distinction between compensatory and punitive damages is that the purpose of punitive damages is to regulate safety, whereas the purpose of compensatory damages is to compensate victims....
>
> ... Whatever compensation standard a State imposes, whether it be negligence or strict liability, a licensee remains free to continue operating under federal standards and to pay for the injury that results.

*Silkwood,* 464 U.S. at 263–64, 104 S.Ct. at 629 (Blackmun, J., dissenting) (emphasis added). *See also id.* at 276 n. 3, 104 S.Ct. at 635 n. 3 (Powell, J., dissenting) ("There is no element of regulation when compensatory damages are awarded.") A lawsuit such as the instant, designed to compensate a victim of defendants' allegedly wrongful behavior, can not be deemed a regulation or prohibition within the express terms of section 1334.

### B. *Implied Preemption—Occupying the Field*

The defendants argue that Congress intended to occupy the entire field of cigarette labeling and advertising with respect to any relationship between smoking and health. They rely on the language of section 1334 and the "national" character of Congress' concerns for public health, preservation of free choice, and the national economy.

---

**3.** Garmon held that when an activity arguably is protected by the National Labor Relations Act or constitutes an unfair labor practice under that Act, those aggrieved, in accordance with the Act, must go to the National Labor Relations Board for relief. State and federal courts must defer to the Board, even if it has declined to assert jurisdiction. *Garmon,* 359 U.S. at 244–45, 79 S.Ct. at 779. Unlike the instant case, *Garmon* involved a federal statute that provided an avenue for redress. The Court's discussion of preemption of state common law claims must be read with that in mind. *See also Construction Workers v. Laburnum Corp.,* 347 U.S. 656, 663–64, 74 S.Ct. 833, 836–37, 98 L.Ed. 1025 (1954).

Again I disagree with the defendants and agree with *Cipollone,* at 186–187, and the cases cited therein, that although Congress intended to occupy a field, that field did not include private "rights and remedies traditionally defined solely by state law." *Id.,* at 186.

It is evident from the statute's language, without any resort to its legislative history, that Congress believed the problem of cigarette labeling was national in scope. It sought "to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health." 15 U.S.C. § 1331. It required nationally uniform warning labels so that commerce or the national economy would not be "impeded by diverse, nonuniform, and confusing cigarette labeling and advertising requirements." 15 U.S.C. § 1331(2). What the language of the Act does not say, however, is that Congress meant to take over the area of compensation for injuries due to cigarette labeling and advertising. The Act makes no mention whatsoever of the issue of compensation of victims of the activity it sought to regulate. As the Supreme Court said in regard to the Atomic Energy Act:

> This silence takes on added significance in light of Congress' failure to provide any federal remedy for persons injured by such conduct. It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct. *See Construction Workers v. Laburnum Corp.,* 347 U.S. 656, 663–64 [74 S.Ct. 833, 836–37, 98 L.Ed. 1025] (1954).

*Silkwood,* 464 U.S. at 251, 104 S.Ct. at 623.

The legislative history also does not indicate that Congress sought to take over the traditionally state-run area of tort compensation. Congressional discussions of preemption do not mention the common law, but instead focus on executive or legislative regulation. See *Cipollone,* 593 F.Supp. at 1160–61, for a collection of the congressional discussions of preemption. Products liability suits had been brought against cigarette manufacturers before Congress passed the Act. Legislators debated how the existence of the warning would affect the defense of assumption of the risk, and thereby indicated knowledge of those lawsuits' existence and recognition that those suits would continue. See *Cipollone,* 593 F.Supp. at 1162–63 for a collection of congressional discussions indicating recognition that common law actions would remain viable.

Neither the pervasiveness of the federal regulatory scheme, the dominance of the federal interest, nor the objectives of and obligations imposed by the federal law indicate that the field Congress meant to occupy included traditionally state-administered products liability law. Although preemption should not be "inferred merely from the comprehensive character" of the regulations at issue, *New York Dept. of Soc. Services v. Dublino,* 413 U.S. 405, 415, 93 S.Ct. 2507, 2514, 37 L.Ed.2d 688 (1973), the pervasiveness of the scheme is certainly probative of Congress' intent. *See, e.g., Cloverleaf Butter Co. v. Patterson,* 315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754 (1942). The instant Act does not create a particularly pervasive federal regulatory scheme. Although it is difficult to compare different federal regulatory efforts because each has a distinct structure and objective, regulation with respect to cigarette labeling is less pervasive or comprehensive than regulation of, for example, interstate trucking, where preemption was found to exist, *Castle v. Hayes Freight Lines, Inc.,* 348 U.S. 61, 75 S.Ct. 191, 99 L.Ed. 68 (1954), or of nuclear power, where preemption was found not to exist, *Silkwood,* 464 U.S. at 258, 104 S.Ct. at 626. While the federal interest in uniform cigarette labeling is dominant, remedying personal injuries is distinct from it and traditionally has been an area of state concern. Neither the objectives of nor obligations imposed by the Act, as explained above and below, reveal an intent to do away with state tort remedies.

C. *Implied Preemption—Actual Conflict*

The defendants argue that there is a conflict between the Act and the plaintiff's

lawsuit because it would be impossible to comply with both the federal warning label requirement and an award of damages against it and because imposition of a damages award would frustrate the objectives of the Act. They argue that cigarettes are manufactured and distributed in interstate commerce and they could not comply both with a federal mandate and diverse state mandates. Once in distribution, cigarette packages would be carried across state lines by consumers as well as distributors, and so would run afoul of divergent state rules. They argue that the purpose of the Act is to protect public health without interfering with the public's freedom of choice (to smoke or not) and a significant aspect of the national economy. Because an award of damages operates exactly like a direct state regulation, it would, in conflict with the Act, require additional or inconsistent labeling.

I disagree with the defendants' contentions that first, it would be impossible to comply with the federal law and be subject to tort liability at the same time, and that second, an imposition of damages would frustrate the Act's objectives. I also disagree with the conclusions of *Cipollone*, at 187, and *Roysdon*, at 1191, that tort suits frustrate the Act's objectives.

### (1) *Impossibility*

In my view, it is not "impossible" for the defendants to be sued, found liable, pay a damage award, and at the same time obey the federal labeling and advertising requirements. Should a jury find the federal warning inadequate or conclude that the defendants' advertising seriously undermined the effects of any warning by portraying smoking as a healthful activity, this would have only an indirect effect on the defendants' labeling and advertising practices. *See* discussion above. A distinction can and must be drawn between directly regulating conduct and indirectly effecting behavior. *See Silkwood, supra.* Congress was completely silent with regard to tort liability for labeling and advertising. It was not silent about preempting direct state regulation, and it did so with full knowledge of the existence of tort suits and with full recognition that they would continue. Because Congress drew a distinction between direct regulation and indirect motivation, this Court must honor it. Preemption is entirely a matter of congressional intent.

The defendants' argument is fatally flawed in equating damage awards with direct state regulation. As explained above, defendants have a choice in deciding how to respond to potential or actual tort liability. Should defendants choose to add an additional warning because they are found negligent in one state, that would not cause them to run afoul of another state's "regulations" if the package crossed state lines. This is because the states, in granting compensation to victims, are not imposing *regulations* concerning labeling. Furthermore, the Act does not exclude other warnings in addition to the federal one, it simply requires that the federal warning be present and prohibits states or the federal government from *requiring* any different warnings.[4] So, if defendants choose to respond to tort liability by adding an additional warning, stronger than that currently required, they will not be violating section 1333.[5]

---

[4] In addition to the language of the Act, further support for the proposition that manufacturers can add additional warnings if they choose is found in a recent statement of Congress with regard to very similar legislation. As explained below, Congress passed in February of 1986 the Comprehensive Smokeless Tobacco Health Education Act, Pub.L. No. 99–252, 1986 U.S.Code Cong. & Ad.News (100 Stat.) 30, which is very similar to the cigarette labeling act in that it also requires uniform rotational health warnings and preempts state regulation. The Senate Committee on Labor and Human Resources, to whom the bill was referred, noted: "Manufacturers, packagers, and importers need not be limited to the three warning statements included in this bill. They may, if they wish, add additional health warning information." S.Rep. No. 209, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Ad.News 7, 13.

[5] Even if the Act precluded any warning in addition to the federally mandated one, that would not necessarily make compliance with the Act and with state tort law impossible. In holding that a jury could find a pesticide manu-

*(2) Frustration of the Act's Objectives*

As explained above, Congress had two somewhat inconsistent goals in mind when it passed the Act. It wanted to ensure that the public be adequately informed of the health hazards associated with smoking. It also wanted to protect commerce and the national economy "to the maximum extent consistent with this declared policy." Along those same lines, it did not want commerce to be impeded by "diverse, non-uniform and confusing labeling and advertising requirements." 15 U.S.C. § 1331. Congress struck a balance between these goals by requiring, at the risk of criminal penalty, a uniform federal warning label, and prohibiting states or the federal government from requiring any different warnings. This is not to say, however, that Congress determined how much information the public should have about the health risks of smoking, and prohibited the dissemination of any more information because of the harmful effects such information would have on the tobacco industry. Cigarette manufacturers are free under the Act to include on their own initiative an additional warning concerning the health risks of smoking. In concluding that there was no conflict between the objectives of the Act and an FCC regulation of television broadcasts regarding cigarettes, Chief Judge Bazelon wrote:

> [I]f we are to adopt [the cigarette manufacturers'] analysis, we must conclude that Congress legislated to curtail the potential flow of information lest the public learn too much about the hazards of smoking for the good of the tobacco industry and the economy. We are loathe to impute such a purpose to Congress absent a clear expression.

*Banzhaf v. F.C.C.,* 405 F.2d 1082, 1089 (D.C.Cir.1968), *cert. denied,* 396 U.S. 842, 90 S.Ct. 51, 24 L.Ed.2d 93 (1969).

Many courts have held that compliance with federal labeling requirements under other similar statutes does not immunize a defendant from suit. A jury is still free to find that a reasonable person would have included additional warnings. *See, e.g., Ferebee v. Chevron Chem. Co.,* 736 F.2d 1529, 1539-43 (D.C.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 545, 83 L.Ed.2d 432 (1985) (labeling paraquat with the warning required under the Federal Insecticide, Fungicide, and Rodenticide Act does not preclude a jury from finding the defendant's warning inadequate); *MacDonald v. Ortho Pharmaceutical Corp.,* 394 Mass. 131, 140, 475 N.E.2d 65 (1985) (jury could conclude that warning was inadequate even though it complied with the labeling requirements of the Food and Drug Administration); *Burch v. Amsterdam Corp.,* 366 A.2d 1079, 1086 (D.C.1976) (compliance with labeling requirements of Federal Hazardous Substances Act does not immunize manufacturers from liability for defective warning); *Blasing v. P.R.L. Hardenbergh Co.,* 303 Minn. 41, 49, 226 N.W.2d 110, 115 (1975) (compliance with federal and local labeling requirements does not preclude finding of negligence); *Stevens v. Parke, Davis & Co.,* 9 Cal.3d 51, 65, 507 P.2d 653, 661, 107 Cal.Rptr. 45, 53 (1973) (compliance with Food and Drug Administration warnings not sufficient to immunize manufacturer from liability); *Maize v. Atlantic Refining Co.,* 352 Pa. 51, 56, 41 A.2d 850, 853 (1945) (label approved by Surgeon General not adequate as a matter of law). *See also* Restatement (Second) of Torts § 288c (1965) ("[c]ompliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions.")

---

facturer liable because of inadequate warnings despite the manufacturer's compliance with the warning requirements of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), the District of Columbia Circuit Court noted that even if FIFRA precluded the defendant from altering its warning label (which it did not) a state could still decide that, "as between a

manufacturer and an injured party, the manufacturer ought to bear the cost of compensating for those injuries that could have been prevented with a more detailed label than that approved by the EPA [under FIFRA]." *Ferebee v. Chevron Chem. Co.,* 736 F.2d 1529, 1541 (D.C. Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 545, 83 L.Ed.2d 432 (1985).

Congress passed the Act with full knowledge of damage suits based on inadequate warnings, and with recognition that such suits could continue to be brought. This Court must therefore conclude, as the Supreme Court did in *Silkwood*, that Congress recognized the "tension" between state common law claims and the federal regulation of cigarette labeling and advertising:

> Congress intended to stand by both concepts and to tolerate whatever tension there was between them. We can do no less. It may be that the award of damages based on the state law of negligence or strict liability is regulatory in that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but that regulatory consequence was something that Congress was quite willing to accept.

*Silkwood*, 464 U.S. at 256, 104 S.Ct. at 625.

Persuasive evidence of Congress' belief that common law claims concerning the adequacy of warnings can exist side by side with federal uniform warning requirements can be found in the Comprehensive Smokeless Tobacco Health Education Act of 1986, Pub.L. No. 99–252, 1986 U.S.Code Cong. & Ad.News (100 Stat.) 30, passed in February, 1986. This Act is very similar to the cigarette labeling act. It requires that rotational warnings of adverse health effects be placed on smokeless tobacco products and advertisements. A major concern of the Act was national uniformity in the labeling requirements. As originally introduced, the bill did not contain a preemption provision. Michael Kerrigan, President of the Smokeless Tobacco Institute, stressed at the hearings on the bill and in letters read to the House and Senate, that without a preemption provision, manufacturers would be subjected to a "multiplicity of diverse labeling requirements." Hearings on H.R. 2950 Before the Health and Environment Subcomm. of the House Energy and Commerce Comm., 99th Cong., 1st Sess. 287 (1985). Congress responded by adding a preemption provision that provided, in part, that "No statement relating to the use of smokeless tobacco products and

health, other than the statements required by section 3, shall be required by any State or local statute or regulation...." Sec. 7(b). The inclusion of this provision prompted the only member of Congress who criticized the bill on the floor of either house to ask other congresspersons to vote for the bill because "[a] chaotic labeling situation in 50 states and 50 different labels is far more injurious to commerce than inappropriate and ill-advised uniform labeling requirements of the Congress." 132 Cong.Rec. H250 (1986).

Congress must have been acutely aware during the period the bill was pending— July, 1985 to February, 1986—of cases like *Cipollone* and *Roysdon* in which cigarette manufacturers were arguing that the federal cigarette labeling requirements preempted common law claims. It included, in its preemption clause, a "savings clause": "Nothing in this Act shall relieve any person from liability at common law or under State statutory law to any other person." Sec. 7(c). Senator Kennedy, the ranking minority member of the Labor and Human Resources Committee, remarked: "[T]he Senate concurs in the statement by the managers of the House side and in our original committee report that we do not, by passage of this legislation, intend to control the promotion or advertising of tobacco products and do not intend to preempt product liability suits in State or Federal courts based on failure to warn." 132 Cong.Rec. S1124 (1986). It seems certain, therefore, that Congress believes that allowing products liability suits involving the adequacy of cigarette warnings will not frustrate its objective of uniform warnings.

*Conclusion*

In summary, I conclude that Congress did not intend to preempt common law remedies for injuries caused by inadequate warnings in cigarette labeling and advertising. Tort compensation has traditionally been an area of state concern. In the absence of explicit reference in the statute or its legislative history to the preemption of the common law, such a conclusion

would be unwarranted, and it would be offensive to our federalist tradition.

My basic disagreement with the Third Circuit opinion is that it effectively immunizes the tobacco industry when Congress did not expressly do so. I am unwilling to join the Third Circuit in finding immunity by implication in this case. Congress, aware of the tension that might exist between national uniform labeling requirements and the common law, chose to tolerate it.

I am mindful of the potential for a dramatic increase in litigation in this area and the resultant burden on our courts and our society. The solution may be to regulate or circumscribe exposure to liability, but that solution must come from Congress, not the courts. Accordingly, this motion to dismiss is denied.[6]

---

**6.** Pursuant to 28 U.S.C. § 1292(b), I am of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of this litigation. These proceedings will be stayed if an application for an appeal of this order is filed.